## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>CREEKSIDE CANCER CARE, LLC,<br>EIN: 27-0468155,<br><br>Debtor. | Case No. 16-21943-MER<br><br>Chapter 11 |

**STIPULATED FINAL ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; AND (C) GRANTING RELATED RELIEF**

THIS MATTER comes before the Court on the Motion of Debtor for Entry of Final Order Authorizing Use Cash Collateral filed on February 10, 2017 (the "**Motion**"[1]) filed by Creekside Cancer Care, LLC (the "**Debtor**").  After entering interim orders authorizing the use of cash collateral on December 21, 2016, January 11, 2017, and February 10, 2017, the Court held a hearing on the Motion on March 3, 2017.  Based on the consideration of the evidence presented, the arguments and objections advanced by all parties in interest, it appearing that proper notice has been provided to parties in interest and the Debtor's use of cash collateral is in the best interests of the estate, the Court **FINDS AND ORDERS**, and the Debtor and MidFirst Bank ("**MidFirst**", formerly known as Steele Street Bank & Trust) stipulate as follows:

### A. Jurisdiction

1. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 1334 and 157.  This matter is a core proceeding as defined in 28 U.S.C. §§ 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor is operating as a debtor-in-possession of its Chapter 11 case (the "**Bankruptcy Case**"), having filed a voluntary petition under Chapter 11 of the United States

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

018535\0004\15433787.1

Bankruptcy Code on December 9, 2016 (the "**Petition Date**") in the United States Bankruptcy Court for the District of Colorado (the "**Bankruptcy Court**"). No trustee, examiner, or official committees have been appointed.

3. Sufficient and adequate notice of the Motion and the hearing thereon was provided pursuant to Bankruptcy Rules 2002, 4001(b), 9006, and 9014, Local Bankruptcy Rules 2081-1 and 4001-3, and as required by Sections 361 and 363 of the United States Bankruptcy Code ("**Bankruptcy Code**").

### B. Debtor's Prepetition Loan Obligations and Post-petition Need for Use Cash Collateral.

4. The Debtor is engaged in business as a cancer care and treatment center, doing business under the name "Colorado CyberKnife." The Debtor provides a range of non-invasive radiation therapy treatment options to its patients.

5. Prior to the Petition Date, the Debtor entered into certain credit agreements with MidFirst ("**MidFirst Credit Agreements**") and certain other agreements with other lenders (together the "**Other Prepetition Lenders**").

6. The MidFirst Credit Agreements, amendments thereto, and all documents, instruments, and agreements executed in connection therewith or related thereto are hereinafter referred to as the "**MidFirst Loan Documents**." Pursuant to the MidFirst Loan Documents, the Debtor incurred loan obligations (the "**MidFirst Obligations**") in favor of MidFirst. As of the Petition Date, the MidFirst Obligations owed by the Debtor to MidFirst were as follows;

    a. MidFirst Loan No. 80010539 ("**MidFirst First Loan**"):

    Principal: $2,407,472.37
    Interest: $13,073.91
    Plus additional fees, costs, and charges provided under the MidFirst Loan Documents.

      b. MidFirst Loan No. 82006768 ("**MidFirst Second Loan**"):

Principal:     $212,786.80
Interest:      $1,177.72
Plus additional fees, costs, and charges provided under the MidFirst Loan Documents.

Since the Petition Date, post-petition interest, charges, fees and other expenses which are due to MidFirst pursuant to the MidFirst Loan Documents have continued to accrue upon the MidFirst Obligations at the non-default rate and shall continue to accrue at the non-default rate until the termination of the Debtor's use of Cash Collateral (as defined below) under this Order.

7. The MidFirst Loan Documents are in all respects valid and binding agreements and obligations of the Debtor, not subject to any claim, counterclaim, setoff, recoupment, expense, recharacterization, subordination, or defense of any kind or nature which would in any way affect the validity, enforcement, and non-voidability of the MidFirst Obligations, or which would reduce or affect the obligation of the Debtor to pay any of such MidFirst Obligations.

8. As security for the MidFirst Obligations, the Debtor granted to or for the benefit of MidFirst various security interests and liens on substantially all, if not all, of its assets and properties (collectively, including all collateral pledged to secure the repayment of the MidFirst Obligations under the MidFirst Loan Documents, the "**Collateral**"). The Debtor admits that the MidFirst Obligations are fully secured pursuant to the MidFirst Loan Documents by liens on and security interests in the Collateral, including without limitation, a first priority deed of trust on the Debtor's real property located at 120 Old Laramie Trail, Lafayette, CO, and that such liens and security interests in the Collateral are valid, binding, properly perfected, unavoidable, and enforceable against the Debtor (subject only to operation of the Bankruptcy Code).

9. The Debtor is not aware of any claims against MidFirst, and to the extent that any claims may exist, waives all claims or causes of action against MidFirst, its officers, directors,

employees, attorneys, advisors and representatives relating to or arising in connection with the MidFirst Loan Documents, the MidFirst Obligations, or any security therefore, including but not limited to any defenses or challenges of Debtor to the validity, extent, perfection, or enforceability of any liens, security interests, claims, or causes of action of MidFirst.

10. To the extent described in the MidFirst Loan Documents, the Debtor's cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in any form, including without limitation income, proceeds, products, rents or profits of property or cash arising from the collection, sale, lease, disposition, use, or conversion to cash of any property (only to the extent the value of such property exceeds any senior liens), or fees, charges, accounts, or other payments for the use or occupancy of rooms or facilities, and such other forms of property as are contemplated under 11 U.S.C. § 363, constitute cash collateral of MidFirst governed by Bankruptcy Code § 363, whether MidFirst's liens or security interests (including, without limitation, any replacement liens or security interests) existed at the commencement of this case or arise thereafter pursuant to this Order or any other order of the Court or applicable law or otherwise, and whether such property that has been converted to cash existed as of the Petition Date or arose or was generated thereafter (collectively, the "**Cash Collateral**").

11. Debtor and MidFirst stipulate and agree that the value of the Collateral (including the Cash Collateral) as of the Petition Date exceeds the MidFirst Obligations. Debtor and MidFirst stipulate, and the Court finds, that MidFirst has demanded adequate protection and that the Debtor's use of the Cash Collateral and the depreciation of non- Cash Collateral assets entitle MidFirst and the Other Prepetition Lenders to the adequate protection provided in this Order in order to maintain the MidFirst's equity cushion and the interests, if any, of the Other Prepetition Lenders.

018535\0004\15433787.1

12. The Debtor represents that it is without sufficient funds to support its continuing operations unless it is permitted to use Cash Collateral, and the Court finds that the present circumstances require that the Debtor be permitted to make use of the Cash Collateral, on the terms set out herein.

13. MidFirst has agreed to consent to the use of its Cash Collateral, and the continued use and depreciation of its Collateral, provided it receives all the adequate protection provided for herein, and all of the terms and conditions of this Order are met.

C. **Terms For Use of Cash Collateral and Provisions for Adequate Protection.**

14. The Debtor shall immediately deposit into the Debtor's DIP account or the Debtor's authorized MidFirst account (pursuant to and subject to the terms of the final order granting the Debtor authority to continue to use existing bank accounts [Doc. 76]) all Cash Collateral in the Debtor's possession, custody, or control, and which any Debtor may receive during the course of this case. Further, any Cash Collateral currently held by any other person or entity, including any affiliate of the Debtor shall be immediately deposited into the Debtor's DIP account. All funds deposited into the Debtor's DIP accounts (at any institution) shall be deemed Cash Collateral.

15. MidFirst is not required to advance to the Debtor any amounts that may be available for lending under the MidFirst Credit Agreements.

16. Debtor shall be permitted to use the Cash Collateral only under the terms and conditions contained in this Order during the term hereof, or during any extensions thereof, or any other orders of the Bankruptcy Court, which orders shall issue only after notice to MidFirst and an opportunity for MidFirst to be heard. Use of Cash Collateral under this Order shall terminate at the conclusion of the Cash Collateral Period, as defined below.

17. From the Debtor's DIP account, Debtor shall pay the current, normal, actual, ordinary, and reasonable post-petition expenses of operating and maintaining its businesses (the "**Post-Petition Expenses**"), which amounts and the extent of said payments are categorized and enumerated in the budget attached hereto as Exhibit A ("**Budget**"). Debtor may not exceed the total amount budgeted for each month (in the aggregate) by more than 10% per month, without the prior written consent of MidFirst or further Order of the Bankruptcy Court, as provided below. For clarity, to the extent the Debtor's actual aggregate Post-Petition Expenses for any month in the Budget period are less than the budgeted aggregate amount for such month, the difference between the actual and the budgeted amount (excluding the 10% variance) shall be carried forward and added to the permitted budgeted amount for the following month. Professional fees may be paid as authorized by order of the Court, provided that MidFirst retains rights to object to allowance if payment of such fees would defeat the adequate protection herein. Beginning in April 2017, the Debtor shall pay MidFirst's reasonable postpetition attorneys' fees and costs on a monthly basis; *provided, however*, that the Debtor shall not be required to pay in excess of $15,000 in April 2017 or in excess of $10,000 in any subsequent month and such unpaid amounts shall be carried into future months. Payments to professionals and to MidFirst shall be excluded for purposes of calculating the Debtor's actual expenditures under the Budget. Subject to the foregoing, Debtor shall only incur and pay Post-Petition Expenses to the extent specifically provided in the Budget.

18. In the event there are insufficient revenues generated from the Debtor's business in any given month to pay Post-Petition Expenses that come due that month, then a Debtor affiliate may advance such funds as are necessary to pay the shortfall; provided, however, in no event shall the repayment of any such advances be entitled to treatment under 11 U.S.C.

6

§ 506(c), unless agreed to by MidFirst, in writing, before any such advance is made, or further Order of the Court, after notice and a hearing.

19. All fees and expenses of any professionals retained by Debtor shall be subject to approval of the Court subject to 11 U.S.C. §§ 327 and/or 330, and shall be paid or reimbursed only after approval of their fees and expenses under such sections (or otherwise authorized by a compensation order of the Court), regardless of whether reflected in the Budget.

20. Debtor shall pay to MidFirst, on or before the 15th day of each month, commencing March 15, 2017, and continuing through the Cash Collateral Period as defined herein, payment equal to the combined monthly interest at the non-default rate as set forth in the MidFirst Credit Agreements on both the MidFirst First Loan and the MidFirst Second Loan (the "**Interest Payments**"). Within three (3) days after entry of this Order, the Debtor shall pay the one monthly Interest Payment that was segregated pursuant to the Court's interim cash collateral order. In addition, Debtor shall pay monthly, commencing in May 2017 on the same day the Interest Payment is made to MidFirst, additional "catch up" payments of one-month's combined interest due on the MidFirst First Loan and MidFirst Second Loan ("**MidFirst Catch Up Payments**"). While the Budget provides for the Debtor to pay catch up payments on the Debtor's rent obligations, the Debtor shall not make such catch up payments on rent unless the Debtor pays the full catch up payment to MidFirst for the same month; nor shall the Debtor be required to make catch up payments to MidFirst if the Debtor does not make catch up payments for rent (i.e., either the Debtor pays both "catch up" payments for rent and to MidFirst, or the Debtor pays neither). The inability to fund catch up payments to both parties shall not be a default under this Order, however the Debtor may not make a catch up payment to either obligation under such circumstance. Payments to MidFirst shall be deemed properly made when

received by MidFirst at the address indicated for notices hereinafter. All payments received by MidFirst under this paragraph shall be applied first to interest owing on the MidFirst Obligations, then to MidFirst's fees and expenses.

21. As adequate protection of MidFirst's interest in the Collateral and Cash Collateral and as adequate protection of the interest of the Other Prepetition Lenders, if any, in the Cash Collateral, the Debtor hereby grants MidFirst and other the Other Prepetition Lenders a valid, perfected, enforceable and automatically perfected post-petition security interest and lien ("**Replacement Liens**") in and upon all post-petition accounts and income that are derived from operation of the Debtor's business and operation of the Debtor's assets (the "**Adequate Protection Collateral**"), to the extent that the use of cash results in a decrease in the value of secured creditor's interest in the collateral pursuant to 11 U.S.C. § 361(2); *provided, however*, that the Replacement Liens shall not attach to any causes of action under chapter 5 of the Bankruptcy Code. All Replacement Liens will hold the same relative priority to assets as did the prepetition liens as of the Petition Date. The Replacement Liens herein granted shall be in addition to all security interests, liens, and rights of setoff in favor of MidFirst and the Other Prepetition Lenders, and shall be valid, perfected, enforceable and effective as of the date of the entry of this Final Order without any further action by the Debtor, MidFirst, or the Other Prepetition Lenders and without the necessity of the execution, filing or recordation or any financing statements, security agreements, or other perfection documents.

22. The Debtor will maintain all insurance policies in effect as of the Petition Date and keep all Collateral fully insured as required by the MidFirst Loan Documents. MidFirst shall be named as a loss-payee on all such policies covering the Collateral.

23. Debtor shall pay all post-petition taxes, including but not limited to payroll, ad valorem, franchise, or personal property taxes, as they come due in the ordinary course of Debtor's business, and prior to assessment of any late fees or interest.

24. The Debtor will provide MidFirst by every Friday, a report showing the following information for the preceding week:

    a. Cash balance.

    b. Expenditures (by providing a copy of the check/disbursement register).

    c. Accounts receivable aging report.

25. By the fifth business day of each month, commencing March 2017 (i.e. March 7, 2017), Debtor shall provide to MidFirst and MidFirst's counsel, a schedule comparing actual versus Budget expenditures for the prior month.

26. Debtor shall permit representatives, agents, and/or employees of the MidFirst to have reasonable access to such entity's premises and its records during normal business hours (without unreasonable interference with the proper operation of the Debtor's businesses) and shall cooperate, consult with, and provide to such persons nonprivileged information as they may reasonably request.

27. The Debtor will maintain in good repair all of the secured creditors' collateral.

28. The Debtor's use of Cash Collateral pursuant to this Order is authorized with a complete reservation of rights of secured creditors to their various claims and lien positions in and to the Debtor's assets.

    **D. Cash Collateral Period And Termination**

29. The "**Cash Collateral Period**" shall be that period of time from the entry of this Order to the earlier of the following events: (a) failure to file a plan of reorganization by

April 10, 2017 (b); June 30, 2017, (c) the entry of a judgment in favor of Accuray or TomoTherapy, Inc., (d) appointment of a Chapter 11 Trustee, examiner with enlarged powers, or other responsible person, or a sale of any asset of the Debtor in which MidFirst has a security interest, outside the ordinary course of business, unless prior to entry of an order approving said action, MidFirst has consented in writing to an extension of this Order; (e) conversion of this Bankruptcy Case to a case under Chapter 7 of Title 11 of the United States Code; (f) occurrence of a default hereunder which remains uncured as provided herein; (g) entry of an order dismissing this Bankruptcy Case and such Order becoming effective pursuant to its terms; (h) transfer of the Collateral to MidFirst; (i) entry of a final order granting relief from the automatic stay to the holder of any security interest in any asset of the Debtor, the Debtor's loss of which would have a material adverse effect on the Debtor's operations, which relief or order is not consented to by MidFirst; (j) filing of an adversary proceeding or avoidance action by the Debtor or any committee against MidFirst; or (k) refusal by the Bankruptcy Court to approve and grant the stipulations and relief in this Order on a final basis or further order of this Bankruptcy Court terminating Debtor's use of Cash Collateral authorized hereunder.

30. Debtor has the burden of returning to this Court to seek authorization for any further use of the Cash Collateral in the event such right is terminated by expiration of the Cash Collateral period, or otherwise.

31. Notwithstanding the termination of Debtor's right to use Cash Collateral hereunder or the expiration of this Order, the rights, liens, and security interests granted to MidFirst hereunder shall survive.

**D.     Default**

32.     Debtor shall be in default under this Order if: (a) Debtor fails to pay any amount required by this Order; (b) Debtor fails to perform any of its obligations, agreements, or promises under this Order; (c) Debtor makes any payment other than as authorized to be paid pursuant to this Order; (d) Debtor has made any material misstatement or misrepresentation in connection with any of the post-petition monthly reports forwarded to MidFirst pursuant to this Order; or (e) Debtor defaults under any other provisions of the MidFirst Loan Documents after the entry of this Order.

33.     Following the occurrence of a default, Debtor shall have three (3) business days after receipt of written notice from MidFirst to cure a monetary default, and five (5) days after receipt of written notice from MidFirst to cure a non-monetary default, if such non-monetary default is of a type that can be cured. If Debtor fails to cure within the specified time period, the Cash Collateral Period shall terminate and Debtor's right to use Cash Collateral shall cease and terminate immediately without further notice by MidFirst, as set out herein.

34.     Nothing in this Order shall prohibit MidFirst from petitioning the Bankruptcy Court for relief from stay or for such additional relief under the Bankruptcy Code as it may desire, such as but not limited to appointment of a trustee, dismissal, conversion, or commencement of an adversary proceeding to obtain any relief they may desire, including equitable, injunctive or monetary relief.

35.     MidFirst may waive any default hereunder after same has been declared, without impairing its right to declare a subsequent default hereunder and without any further notice from MidFirst that Debtor must strictly comply with the obligations imposed hereunder. Failure of

11

MidFirst to strictly enforce any remedy shall not be justification thereafter to refuse to strictly enforce any remedy which MidFirst may request of the Court.

### E.     Notice

36.     All notices required or permitted under this Order shall be sent to the respective party and attorney at the address listed below by certified mail, return receipt requested, hand-delivery, or by facsimile transmission. In the event of notice by certified mail, notice shall be effective upon receipt and refusal of delivery as shown by the return receipt. In the event of notice by facsimile transmission, notice shall be effective upon successful facsimile transmission. In the event of notice by hand-delivery, notice shall be effective upon receipt.

37.     If notice is given to MidFirst, it shall be sent to:

> Glen Shipley
> Senior Vice President
> MidFirst Bank
> 501 N.W. Grand Blvd.
> Oklahoma City OK 73118
> Phone: 405.767.7530
> Fax: 405.767.5433

With a copy to:     Bradford E. Dempsey
> Faegre Baker Daniels LLP
> 1700 Lincoln St. Suite 3200
> Denver, CO 80203
> Phone: 303.607.3675
> Fax: 303.607.3601

If notice is given to Debtor, it shall be sent to:

> Creekside Cancer Care, LLC
> C/O Matthew O'Rourke
> 120 Old Laramie Trail E
> Lafayette, CO 80026
> Phone: (303) 926-9800
> Fax: (303) 926-9801

018535\0004\15433787.1

      With a copy to:

            Samuel M. Kidder
            Michael Pankow
            Brownstein Hyatt Farber Schreck, LLP
            410 Seventeenth Street, Suite 2200
            Denver, CO 80202
            Phone: (303) 223-1117
            Fax: (303) 223-0906

### F. General Provisions And Findings

38. The provisions of this Order shall be binding upon and inure to the benefit of MidFirst, Debtor, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed for the estate of the Debtor, whether in the chapter 11 case or in the event of the conversion of the case, and such binding effect is an integral part of this Order.

39. Nothing in this Order shall be a preclusion or limitation as to any setoff rights, including such rights under 11 U.S.C. § 553, of MidFirst against Debtor, all of which rights are hereby preserved.

40. Nothing herein shall prejudice MidFirst's rights to challenge any aspect of this Bankruptcy Case or to seek any relief under Title 11 or Title 28 with respect to any aspect of this Bankruptcy Case. Further, nothing herein contained shall be construed to alter, modify, or change in any respect the terms and conditions of the MidFirst Loan Documents, or to waive MidFirst's rights to full payment of the MidFirst Obligations thereunder.

41. Notwithstanding anything else herein, none of the Cash Collateral or proceeds thereof (including any payments to professionals) may be used by the Debtor or any other person or entity to object to or contest in any manner, or raise any defenses to, the validity, extent, perfection, or enforceability of the MidFirst Obligations, the MidFirst Loan Documents, or any liens or security interests with respect thereto, or any other rights or interests of MidFirst, or to

assert any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against MidFirst.

42. MidFirst retains all rights to (i) seek further relief from the automatic stay of section 362 of the Bankruptcy Code at any future time, (ii) seek additional adequate protection from the Debtor (and nothing contained herein shall be construed as a finding of complete adequate protection as to the Cash Collateral or the Collateral), (iii) request a conversion or dismissal of any or all of the Debtor's chapter 11 cases, or the appointment of a trustee or an examiner, (iv) propose a chapter 11 plan or plans, or object to and oppose a chapter 11 plan or plans, or (v) seek such other relief as to which MidFirst may be entitled, including without limitation any adversary proceeding, any claim for substantial contribution under 11 U.S.C. § 503, or any other such rights and remedies as MidFirst may have under the Bankruptcy Code, at law or in equity, or otherwise. Notwithstanding the foregoing, in consideration of the adequate protection provided herein, MidFirst agrees not to seek interest at the default rate for the period from the Petition Date through the termination of the Debtor's use of Cash Collateral under this Order.

43. Except as to professionals' fees, regarding which the Debtor's and MidFirst's rights are reserved, neither the Collateral (including the Cash Collateral) nor MidFirst shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtor or any other party in interest, and in no event shall MidFirst be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral. Upon entry of this Order, the Debtor shall have been deemed to have waived, on behalf of its bankruptcy estate, any claim it, or any successor or assign (including any trustee), may have under section 506(c). MidFirst shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and

the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to MidFirst.

44. The Debtor will not, at any time during the Cash Collateral Period, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise, except upon consent of MidFirst.

45. Debtor is hereby enjoined from using Cash Collateral, except as provided for in this Order or in an order entered by the Bankruptcy Court following notice to and an opportunity for MidFirst to be heard. Nothing herein contained shall be in prejudice of the right of MidFirst to seek modification or termination of this Order based upon a change of circumstances.

46. In negotiating this Order, or exercising its rights to collect the MidFirst Obligations, MidFirst shall not be deemed to be in control of the operations of Debtor or to be acting as a responsible person or owner or operator with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation, and Liability Act, as amended, or any similar Federal or State statute).

47. Time is of the essence with respect to all performance required by this Order.

48. MidFirst shall not be obligated to file a proof of claim in this Bankruptcy Case but may elect to file a claim at its option.

49. Sufficient and adequate notice of this Final Order and the relief requested in the Motion has been given pursuant to sections 102(1) and 363(c) of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001(d).

50. This Order constitutes findings of fact and conclusions of law, and takes effect and becomes enforceable immediately upon execution hereof.

51. This Court shall retain jurisdiction to resolve issues that arise pursuant to this Order

Dated: _____, 2017.

_____
UNITED STATES BANKRUPTCY JUDGE

**STIPULATED AND AGREED:**

BROWNSTEIN HYATT FARBER SCHRECK, LLP

s/ _____
Michael J. Pankow, #21212
Samuel M. Kidder, #49125
410 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
mpankow@bhfs.com
skidder@bhfs.com

*Attorneys for Debtor*


FAEGRE BAKER DANIELS LLP

*/s/* _____
Bradford E. Dempsey
Brandan K. Oliver
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
(303) 607-3500 Phone
(303) 607-3600 Facsimile
brad.dempsey@faegrebd.com
brandan.oliver@faegrebd.com

*Attorneys for MidFirst Bank*

018535\0004\15433787.1

**EXHIBIT A**

Creekside Cash Collateral Budget

|  | February 2017 | March 2017 | April 2017 | May 2017 | June 2017 |
|---|---|---|---|---|---|
| **Beginning Cash Balance*** | $189,836.17 | $199,707.16 | $263,821.93 | $293,061.70 | $300,176.47 |
|  |  |  |  |  |  |
| **(Income & Receipts)** |  |  |  |  |  |
| Total Projected Monthly Revenue | $205,000.00 | $210,000.00 | $215,000.00 | $220,000.00 | $225,000.00 |
| **(Expenses & Disbursements)** |  |  |  |  |  |
| Rent | $17,000.00 | $17,000.00 | $17,000.00 | $17,000.00 | $17,000.00 |
| **Makeup Rent - 1st/2nd Interim Period** |  |  |  | $17,000.00 | $17,000.00 |
| **Payroll (incl Payroll Taxes)** | $65,500.00 | $65,500.00 | $65,500.00 | $65,500.00 | $65,500.00 |
| Utilities | $7,790.00 | $7,790.00 | $7,790.00 | $7,790.00 | $7,790.00 |
| **Insurance Expense (non-employee)** | $5,994.50 | $5,994.50 | $5,994.50 | $5,994.50 | $5,994.50 |
| **Employee Benefit Payments/Insurance** | $3,759.00 | $3,759.00 | $3,759.00 | $3,759.00 | $3,759.00 |
| **Misc. Operating Expenses** | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| Supplies | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Inventory | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Maintenance | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Other | $4,166.67 | $4,166.67 | $4,166.67 | $4,166.67 | $4,166.67 |
| **MidFirst Bank** | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| **MidFirst Catch Up Payments** |  |  |  | $15,000.00 | $15,000.00 |
| **Adequate Protection Payments** |  |  | $35,000.00 | $35,000.00 | $35,000.00 |
| **U.S. Trustee Quarterly Fees** |  |  | $4,875.00 |  |  |
| 2016 Boulder Cnty. Property Taxes (120 OLT) - escrow | $5,575.06 | $5,575.06 | $5,575.06 | $5,575.06 | $5,575.06 |
| 2016 Boulder Cnty. Property Taxes (140 OLT) - due under lease | $49,243.78 |  |  |  | $49,243.78 |
| Professional Fees* |  |  |  |  |  |
| **Total Monthly Expenses** | $195,129.01 | $145,885.23 | $185,760.23 | $212,885.23 | $262,129.01 |
|  |  |  |  |  |  |
| **Ending Cash Balance*** | $199,707.16 | $263,821.93 | $293,061.70 | $300,176.47 | $263,047.46 |
|  |  |  |  |  |  |
| **A/R Balance as of Month End** | $725,000.00 | $750,000.00 | $775,000.00 | $800,000.00 | $825,000.00 |
|  |  |  |  |  |  |
| ***Prof Fees to be paid in such amounts and at such times as permitted by Court order. Cash balance will be reduced by such amounts.** |  |  |  |  |  |